UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW ROBERT BRAND,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>  Defendant. | **Case No.: 1:14-cv-00389-GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

I.  **INTRODUCTION**

Plaintiff Andrew Robert Brnand ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

II.  **BACKGROUND AND PRIOR PROCEEDINGS**[2]

Plaintiff was 51 years old at the time of his hearing before the Social Security

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. ECF Nos. 7, 8.
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Administration. AR 33. He completed his education up through the 11th grade, but did not graduate from high school. AR 33. Plaintiff most recently worked in 2010 as a seasonal worker in a packaging plant run by Wawona Frozen Foods, although his employment was terminated at the end of the season. AR 33, 216. Before that, he worked intermittently as a mechanic, heavy machine operator, and performed various other jobs through temp agencies. Plaintiff has several children and is separated from his wife.[3] AR 33. He does not have a permanent residence and drifts between the homes of friends and family. AR 42.

Plaintiff's alleged physical conditions include COPD, vision problems, and rheumatoid arthritis. AR 210. He also alleges that he suffers from depression. *Id*. He uses an Albuterol inhaler as necessary to manage his condition. AR 46, 489. He also has a long history of tobacco use, beginning at the age of nine and continuing to the present. AR 39, 489.

Plaintiff previously applied for disability benefits and SSI, but his application was denied on December 12, 2008. AR 38. On February 17, 2011, Plaintiff filed a new application for disability insurance benefits and SSI under Titles II and XVI. AR 188-195, 196-204. The applications were denied initially on July 18, 2011 and on reconsideration on December 16, 2011. AR 107-109, 110-113, 120-125. Plaintiff filed a request for a hearing on December 23, 2011. AR 126-130. The hearing was conducted before Administrative Law Judge John Cusker (the "ALJ") on September 14, 2012. AR 29. On November 2, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 13-23. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied his appeal, rendering the order the final decision of the Commissioner. AR 4-7.

Plaintiff now challenges the ALJ's decision, arguing that the ALJ incorrectly found his testimony not credible. Specifically, he argues that the ALJ did not offer clear and convincing reasons for rejecting Plaintiff's testimony about his pain and functional limitations. (Opening Brief 6:16-26, ECF No. 16.)

Defendant responds that: (1) Plaintiff's alleged impairments are not supported by medical

---

[3] It is unclear how many children Plaintiff has—he told one consulting examiner that he had three but another consulting examiner that he had seven. AR 384, 507.

findings; (2) Plaintiff failed to seek treatment for his symptoms, indicating a lack of credibility; (3) Plaintiff failed to follow medical advice to reduce his symptoms, indicating a lack of credibility; and, (4) Plaintiff's daily activities were inconsistent with his stated limitations. (Opposition Brief 7:5-7, 8:19-25, 9:1-5, 16-19, ECF No. 17.)

### III.    THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-23. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2006, the date specified in his application.[6] AR 15. Further, the ALJ identified COPD, arthralgia, depressive disorder, and a remote history of drug and alcohol abuse. AR 15. Nonetheless, the ALJ determined at step two of the five-step process that Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for twelve consecutive months. AR 16. Based on a review of the entire record, the ALJ thus determined that Plaintiff did not have a severe impairment or combination of impairments.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: he can lift and carry 20 pounds occasionally and ten pounds frequently. Sitting and standing are unlimited, and he can walk for 90 minutes at a time, and for 5 hours in an 8-hour workday. He can occasionally climb stairs, ramps, ladders, ropes and scaffolds. Exposure to dust, odors, fumes, and pulmonary irritants is limited to occasional. He can maintain attention and concentration sufficient to carry out simple job[ ] instructions, and relate to and interact with coworkers, supervisors, and the general public." AR 18 (internal citations omitted). Although Plaintiff could not perform his past relevant work, he could perform other work that exists in the national economy. AR 21.

### IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

---

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

[6] Although Plaintiff worked after 2006, the ALJ determined that this work activity constituted an "unsuccessful work attempt." AR 15.

whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

**V.   DISCUSSION**

   **A.  The Relevant Medical Evidence**

Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony, and thus erroneously determined that Plaintiff was not disabled. The parties do not contest the ALJ's assessment of the physicians provided examinations with respect to Plaintiff's condition. The following review of the record is therefore limited the issue of Plaintiff's credibility.

   *i.  Steven Stoltz, M.D.*

Dr. Stoltz was a consulting examiner who examined Plaintiff on two separate occasions. AR 391, 489. In his first visit, in 2009, Plaintiff complained to Dr. Stoltz of COPD and arthralgias "involving both knees, ankles, back, hands, fingers and wrists." AR 391. Plaintiff noted that his symptoms were worse "later in the day" or when "running or brisk[ly] walking." AR 391. He noted difficulty "playing football" or "going up and down stairs." AR 391. He also reported smoking 5-10 cigarettes per day. AR 391. After conducting his examination, Dr. Stoltz concluded that Plaintiff's "only limitation would be environmental" and that he would be limited to "only occasional exposure to dusts, odors, fumes and other pulmonary irritants." AR 396.

In Plaintiff's second visit to Dr. Stoltz, in 2011, Plaintiff complained of COPD and arthritis. AR 489. He reported smoking 10 cigarettes per day and noted that his COPD appeared to be exacerbated when he was "running, playing basketball or doing other exertional activities." AR 489. Dr. Stoltz noted that there was no evidence in the form of prior testing, documentation, treatment, or imaging studies to reflect Plaintiff's complaints of arthritis. AR 489. Plaintiff also

complained of vision problems, which Dr. Stoltz noted may be "age-related." AR 490. Plaintiff has never seen an optometrist or ophthalmologist and does not wear glasses or contact lenses. AR 490. Dr. Stoltz reported that Plaintiff "was breathing comfortably" and showed no shortness of breath. AR 491. Dr. Stoltz concluded that Plaintiff "does not appear to have any signs or symptoms of rheumatoid arthritis." AR 494. Based on his COPD, however, Dr. Stoltz once again recommended that he be limited in his exposure to dusts, odors, fumes, and other irritants. AR 494. In addition, he found that he could sit or stand without limitations and could "walk for 90 minutes at one time without interruption and five hours total in an eight hour work day." AR 494.

### ii. Soad Khalifa, M.D.

Dr. Khalifa completed a consultative psychiatric examination of Plaintiff in 2009. In that examination, Plaintiff complained of COPD and depression. AR 383. He told Dr. Khalifa that he had no social activities or hobbies, although he typically spent his days cleaning or watching TV. AR 384. Dr. Khalifa concluded that Plaintiff would "have some difficulty performing simple or complex tasks" based on his COPD and "depressive symptoms." AR 385.

### iii. Ekram Michiel, M.D.

Dr. Michiel conducted a consultative psychiatric examination of Plaintiff in 2011. AR 506. He complained to Dr. Michiel of COPD and rheumatoid arthritis. AR 507. He explained that his hobbies included working on cars and woodworking. AR 507. Based on the examination, Dr. Michiel concluded that Plaintiff "is able to maintain attention and concentration to carry out simple job instructions." AR 508. Dr. Michiel also found that Plaintiff had "no restrictions on activities of daily living." AR 509.

**B. Legal Standards**

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged;

she need only show that it could reasonably have caused some degree of the symptom." *Id.* (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id*.

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted). Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297. An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

**C. The ALJ's Evaluation of Plaintiff's Credibility was Appropriate**

Here, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 21. He questioned, however, "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms." AR 21. The ALJ was thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible. *Vasquez*, 572 F.3d at 591.

The ALJ includes a lengthy discussion of his doubts with respect to Plaintiff's credibility in his decision:

> The claimant alleged he was unable to work because of difficulty breathing[,] back and elbow pain, shoulder pain, frequent headaches, and poor vision. Medical

7

> findings do not support many of these allegations.
>
> . . .
>
> The claimant has described activities of daily living, [sic] which are not as limited as one would expect considering the complaints of disabling symptoms. The claimant prepares his own meals daily. He does laundry and cleaning. He is able to use public transportation. The claimant goes shopping for groceries and clothing. The claimant used to watch television. The claimant went to bible study group at his church, and attended church on the weekend. At the hearing, he testified that he has no fixed address, but stayed with various people. He spends much of his time out-of-doors.
>
> Although the claimant has received various forms of treatment for his allegedly disabling symptoms, he testified that he had no treatment since an appendectomy in 2011. He was last treated for suicidal ideation in 2009. He alleged manipulative impairment, but admitted no treatment since 1987. He takes no prescription medication, but borrows inhalers from others. He has also continued to smoke against direct medical advice, thereby failing to follow treatment recommendations.
>
> Considering the lack of treatment, inconsistency between the claimant's allegations and medical evidence and opinions, and failure to follow medical advice, I find the claimant's allegations not credible.

AR 21 (internal citations omitted).

The ALJ thus suggests at least four reasons to find Plaintiff not credible: (1) Plaintiff's testimony is inconsistent with the objective medical evidence; (2) Plaintiff's testimony is inconsistent with his daily activities; (3) Plaintiff's testimony is inconsistent with his failure to seek treatment; and (4) Plaintiff's testimony is inconsistent with his failure to follow medical advice.

Plaintiff's failure to seek treatment for his symptoms does not constitute a clear and convincing reason to find him not credible. Plaintiff explained at the hearing that he has been unable to seek medical treatment because he lacked insurance to pay for it. An "unexplained, or inadequately explained, failure to seek treatment" *can* be used to discredit a plaintiff, but such a failure is adequately explained where a plaintiff lacks the funds to pay for treatment. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Similarly, Plaintiff's failure to follow medical advice does not demonstrate that he lacks credibility. A failure to "follow prescribed treatment" *for pain* may be probative of a plaintiff's credibility. *Orn*, 495 F.3d at 638. Where the "stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful," however, a failure to follow

8

prescribed treatment may be less indicative of credibility. *Id.* Plaintiff's failure to quit smoking does not appear to be linked to his symptoms of pain or other constant stimuli that would encourage him to follow the prescribed instructions. Indeed, according to Dr. Stoltz, there was little evidence that Plaintiff was suffering from *any* disabling pain or other consistent symptoms. AR 494. Thus, his failure to quit smoking does not indicate a lack of credibility.[7]

The ALJ's other two reasons for discounting Plaintiff's testimony, however, are specific, clear, and convincing. **First**, he finds that Plaintiff's statements are inconsistent with the objective evidence in the record. He does this with specificity, identifying precisely which statements Plaintiff made (*e.g.*, Plaintiff said he had "difficulty breathing, back and elbow pain, shoulder pain, frequent headaches, and poor vision") and discusses evidence in the record that contradicts those statements (*e.g.*, records show "[b]reath sounds were symmetric and there were no wheezes, rhonchi, or rales; the expiratory phase was within normal limits"). AR 19, 21. **Second**, he points to instances in which Plaintiff's statements were inconsistent with his daily activities. AR 21.

Each of these reasons is supported by substantial evidence. The statements the ALJ cites as inconsistent do, in fact, appear in the record. And there is ample evidence showing that each of those statements is contradicted. For instance, the Plaintiff stated that he had great difficulty walking without stopping to catch his breath. AR 49 ("**Q.** Okay. And how far can you walk before you have to stop the very first time? **A.** Anywhere—probably 40, 50 [yards], that's it and then I have to sit—stop and catch my breath."). But the statement is contradicted by Dr. Stoltz's opinion, which found that Plaintiff could walk for 90 minutes at a time and for up to five hours a day. AR 494. Plaintiff also complained of pain in his arms, shoulder, back, and hands so severe that he was unable to lift anything heavier than "a hamburger." AR 50. But both of Dr. Stoltz's examinations found Plaintiff's extremities almost entirely within normal limits and rated his strength at 5/5. AR 19, 394-395, 492-493. As the ALJ points out, Dr. Stoltz found no "prior testing, documentation, or treatment" for the alleged pain. AR 19, 391, 489. There is substantial

---

[7] The parties dispute whether or not the ALJ was required to conduct an inquiry into Plaintiff's failure to quit smoking before he used that failure to discredit Plaintiff's testimony. Because the Court finds that Plaintiff's failure did not constitute a clear and convincing reason to find him not credible, however, it need not resolve the parties' dispute on this question.

evidence to support the ALJ's finding that the objective medical evidence is inconsistent with Plaintiff's testimony.

Similarly, there is substantial evidence to suggest that Plaintiff's daily activities were inconsistent with his testimony. Despite the above mentioned deficits, Plaintiff was able to engage in normal daily activities, including going to church on a weekly basis, shopping, and cleaning. AR 20, 406. His hobbies include woodworking and working on cars. AR 507. Moreover, Dr. Michiel explained that Plaintiff had "no restrictions on activities of daily living." AR 509. Given the weight of these facts, it was entirely reasonable for the ALJ to conclude that Plaintiff lacked credibility when discussing the severity of his symptoms.

## VI.     CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not significantly limited in his ability to perform basic work activities is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, Commissioner of Social Security and against Plaintiff, Andrew Robert Brand.

IT IS SO ORDERED.

Dated:   **June 9, 2015**                              /s/ Gary S. Austin
                                                    UNITED STATES MAGISTRATE JUDGE